# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
### WESTERN DIVISION

| | | |
|---|---|---|
| GREGORY TURNER, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | No. 2:20-cv-02210-SHL-atc |
| | ) | |
| MEMPHIS AREA TRANSIT | ) | |
| AUTHORITY, | ) | |
| | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION
## TO GRANT SUMMARY JUDGMENT

Before the Court is Defendant Memphis Area Transit Authority's ("MATA") Motion for Summary Judgment, filed January 20, 2022. (ECF No. 37.)[1] *Pro se* Plaintiff Gregory Turner filed his response to the motion on January 27, 2022. (ECF No. 39.) MATA filed its reply on February 10, 2022. (ECF No. 40.) For the following reasons, it is recommended that MATA's motion be GRANTED in its entirety.

### PROPOSED FINDINGS OF FACT

As a threshold matter, the Court must address which facts are undisputed for purposes of ruling on the motion. Contemporaneous with the motion, MATA filed a statement of twenty-four undisputed facts. (ECF No. 38.) Turner's response does not substantively address the arguments put forth in the motion but instead addresses those twenty-four facts, disputing some,

---

[1] Pursuant to Administrative Order No. 2013-05, this case has been referred to the United States Magistrate Judge for management and for all pretrial matters for determination or report and recommendation, as appropriate.

indicating no dispute with others, and asserting additional facts he maintains are undisputed.

(*See* ECF No. 39.)  MATA's reply addresses Turner's responses to the proposed facts as well as

the additional facts Turner submitted.  (ECF No. 40.)  MATA asserts in its reply that many of the

facts Turner submitted should be disregarded because they fail to cite to the record, rely on

inadmissible hearsay and unauthenticated evidence, and otherwise fail to create a genuine

dispute of material fact.  (*See id.*)

>   Under the Federal Rules of Civil Procedure,
>
>   [a] party asserting that a fact cannot be or is genuinely disputed must support the
>   assertion by:
>
>>   (A) citing to particular parts of materials in the record, including
>>   depositions, documents, electronically stored information, affidavits or
>>   declarations, stipulations (including those made for purposes of the motion
>>   only), admissions, interrogatory answers, or other materials; or
>>   (B) showing that the materials cited do not establish the absence or
>>   presence of a genuine dispute, or that an adverse party cannot produce
>>   admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).  Further, "[a]n affidavit or declaration used to support or oppose a

motion must be made on personal knowledge, set out facts that would be admissible in evidence,

and show that the affiant or declarant is competent to testify on the matters stated."  Fed. R. Civ.

P. 56(c)(4).  If a party fails to support a factual assertion or fails to address another party's

factual assertion, the court may: "(1) give an opportunity to properly support or address the fact;

(2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the

motion and supporting materials—including the facts considered undisputed—show that the

movant is entitled to it; or (4) issue any other appropriate order."  Fed. R. Civ. P. 56(e).

>   Considering the foregoing, the Court finds the following facts are undisputed for

purposes of the motion:

In June 2018, Turner made his first application for employment with Mid-South Transportation Management ("MTM"), a private corporation that manages and operates MATA, including the hiring and management of MATA's bus drivers. (ECF No. 40 ¶¶ 1, 3.)[2] MTM made a conditional offer of employment to Turner on June 22, 2018, setting an anticipated start date of July 9, 2018. (ECF No. 40 ¶ 4.) At the time of Turner's conditional hiring, MTM's process was to offer conditional employment contingent on the hiree's completion of a Department of Transportation ("DOT") physical exam and receipt of DOT medical certification that the candidate was cleared to drive for at least a year. (*Id.* ¶ 5.)[3] If a prospective employee was unable to obtain a one-year DOT medical clearance, MTM policy was to rescind the offer of employment. (ECF No. 40 ¶ 5.)[4]

---

[2] MATA includes in its Reply to Plaintiff's Response to Statement of Undisputed Material Facts (ECF No. 40) a verbatim recitation of the responses and additional facts Turner sets forth in his response (ECF No. 39), and thus, for ease of reference, the citations herein will be to MATA's reply. The sole exception is MATA's Fact No. 24, which it identifies as having no response by Turner (ECF No. 40 ¶ 24); in fact, Turner indicated he did not dispute Fact No. 24 for purposes of summary judgment (ECF No. 39 ¶ 24).

[3] Turner disputes this fact, claiming that he was not given the opportunity to submit proof of his one-year clearance, which he claims he obtained, and relying on his Exhibit 1 of 1, a description of DOT exams by the Federal Motor Carrier Safety Administration, and Exhibit 1 of 2, which appears to be the results from his June 28, 2018 DOT Medical Examination Report. (ECF No. 39, at 9, 13–21.) None of those facts establishes a dispute regarding MTM's process or policy in place at the time. Turner also asserts that "MTM hasn't revealed to me any policy or given me any copies MTM written manuals showing any such companies rules about that you must have a 1-year DOT cards." (ECF No. 40 ¶ 5.) MATA supported its proposed fact, however, with the Declaration of Susan T. Schubert. (ECF No. 38 ¶ 5; *see also* ECF No. 38-1 ¶ 5.) MATA thus appears to have adequately supported its contention with a citation to the record, and Turner has offered nothing to call into question the adequacy of the Schubert declaration. *See, e.g.*, *Johnson v. Cargill, Inc.*, 932 F. Supp. 2d 872, 885 (W.D. Tenn. 2013) (explaining that "[t]he standards for establishing that a factual proposition is undisputed," as stated in Rule 56(c)(1), include reliance upon declarations that are "made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated") (citing Fed. R. Civ. P. 56(c)(4)). This fact is therefore deemed undisputed.

[4] As explained in note 3, Turner offers nothing to bring this fact into dispute. The additional facts submitted by Turner—that a DOT physical exam is valid for up to twenty-four months and that a medical examiner's certificate may be issued for less than twenty-four months when

MTM's records related to Turner's June 2018 job application include a DOT Medical Examination Report ("DOT Report") from an exam conducted on June 28, 2018, which includes the sort of information MTM relies upon when making hiring decisions.  (*Id.* ¶¶ 7, 9.)  The DOT Report, which Turner completed and signed, made no reference to sleep apnea and certified that Turner had never undergone a sleep study and had never been diagnosed with sleep apnea.  (*Id.* ¶¶ 8, 11.)[5]  The DOT Report gave Turner a three-month medical clearance, and the examiner recommended that Turner submit to a sleep study based not on him having sleep apnea, but rather based on his body mass index.  (ECF No. 40 ¶¶ 9, 10.)[6]  Turner had already undergone a

---

desirable to monitor a condition such as high blood pressure (*id.*)—are not material, as the parties have not raised an issue regarding the validity or expiration of any exam or certificate.
[5] Turner disputes MATA's Fact No. 8, asserting that the entity that conducted the examination filled out the examination form incorrectly and he "made the mistake of not checking behind them," and further asserting that he told the intake nurse that he had already taken the "sleep apnea studies test."  (*Id.* ¶ 8.)  In support, Turner cites his Exhibit 1 of 2 again (a version of the DOT Report, though different from that submitted by MATA, *compare* ECF No. 39, at 14–21, *with* ECF No. 38-2, at 28–35), which simply confirms the facts as stated by MATA.  Turner also cites his Exhibit 1 of 3, which appears to be compliance and therapy reports from his use of a C-Pap machine from August 13, 2018, through April 24, 2019.  (ECF No. 39-1, at 1–13.)  Neither of these exhibits supports any of Turner's contentions that he told the examiner he had undergone a sleep apnea study, and those contentions are thus unsworn allegations insufficient to bring MATA's facts into dispute.  *See, e.g.*, *Haywood v. Brennan*, No. 2:18-cv-02473-MSN-cgc, 2020 WL 7480807, at *5 n.7 (W.D. Tenn. Dec. 18, 2020), *report and recommendation adopted*, 2021 WL 3885083 (W.D. Tenn. Aug. 31, 2021) (explaining that, consistent with 28 U.S.C. § 1746(2), a court can rely on "unsworn, signed declarations as evidence in deciding motions for summary judgment under Rule 56 if the declaration is: 1) in writing, 2) dated, and 3) verifies that its content is true under penalty of perjury") (citations and quotations omitted).  Turner has provided neither a sworn nor unsworn filing that satisfies the § 1746(2) criteria.  This fact is therefore deemed undisputed.
[6] Though Turner does not dispute these facts, he elsewhere asserts that he was not given the opportunity to submit a one-year card, that he successfully passed the DOT physical exam, and that he was able to obtain the one-year certification.  (*Id.* ¶ 5.)  The exhibits he offers to support those facts do not, however, do so—his Exhibit 1 of 1 is a general description of the DOT exam, and Exhibit 1 of 2 is a copy of the DOT Report qualifying him for three months.  (ECF No. 39, at 13, 17.)

sleep study prior to the DOT examination, in which he tested positive for sleep apnea,[7] and he could not afford a second one.  (ECF No. 40 ¶ 12.)[8]  Turner asked MTM for an accommodation in the form of additional time to locate the prior sleep study, but MTM denied the request.  (*Id.* ¶ 13.)[9]

MTM rescinded Turner's conditional job offer on or about July 2, 2018, based on his failure to provide a sleep study analysis and his inability to obtain a one-year DOT medical clearance, and Turner never began to work for MTM.  (ECF No. 40 ¶¶ 15, 16.)[10]

---

[7] Turner asserts that sleep apnea is "a Disability recognized by the Government."  (ECF No. 40 ¶ 14.)  Other than arguing that some of the exhibits cited by Turner are not part of the record and are inadmissible, MATA does not appear to dispute this contention.  (*Id.*)

[8] Though Turner identifies this fact as disputed, he appears to agree with it, stating that he had already done a sleep study, in which he had tested positive for sleep apnea.  (*Id.*)  MATA does not dispute those facts for purposes of summary judgment.  (*Id.*)  Turner proposes the additional facts that it was Concentra Urgent Care Policy to require a sleep test for overweight examinees and that he still uses a C-Pap machine "faithfully" (*id.*), but those facts are not material to this dispute.

[9] Though Turner identifies this fact as disputed, he appears to agree with it, stating that he asked Erica Hayes, a recruiting manager at MTM, for an additional sixty days to submit his prior test results.  (*Id.*; *see also id.* ¶ 14.)  Turner offers the additional facts that he talked with Hayes "about a ninety-day DOT card, with the beginning of training was only 30 days[, t]hat an addi[tional] 60 days to make sure that Concentra Urgent Care request for sleep apnea compliance be submitted to them."  (*Id.*)  In support, Turner offers his Exhibit 1 of 5 and 1 of 3, but neither provides any proof of this conversation with Hayes.  Exhibit 1 of 5 is a letter to Turner from MTM entitled "Offer of Employment," which states that the offer "is contingent on successful completion of all aspects of the background screening," including "[p]re-employment DOT physical examination."  (ECF No. 39-1, at 19.)  Exhibit 1 of 3 is his C-Pap compliance and therapy reports.  (ECF No. 39-1, at 1–13.)

[10] Turner disputes this fact, stating that he explained to Hayes that he would provide the sleep apnea reports and could obtain the clearance.  (*Id.* ¶ 15.)  Those unsworn statements with no citation to the record are insufficient to demonstrate a dispute.  *See, e.g.*, *Haywood*, 2020 WL 7480807, at *5 n.7.  Turner also disputes this fact by arguing that MTM rescinded the job offer because of his request for reasonable accommodation, not because he failed to provide the necessary documentation.  (ECF No. 40 ¶ 16.)  He cites to his Exhibit 1 of 3, the C-Pap machine compliance and therapy reports (ECF No. 39-1, at 1–13), but those documents offer nothing to support his contention—indeed, they appear to have been created after MTM rescinded the job offer.  This fact is therefore deemed undisputed.

Turner applied for employment with MTM a second time in January 2019.  (ECF No. 40 ¶ 17.)  The application he filled out asked whether he had applied before and, if so, when; it did not ask for details regarding the results of his prior application.  (ECF No. 39 ¶ 24.)  The two MTM employees who interviewed Turner in January 2019 were not the employees who interviewed him in 2018.  (ECF No. 40 ¶ 18.)  Neither of those MTM employees knew he had sleep apnea, and the topics of sleep apnea, sleep studies, disabilities, and requested accommodations did not arise during Turner's 2019 interview.  (*Id.* ¶ 19.)[11]  Nor were those interviewers aware that Turner had applied for a position in 2018 or of any information related to that application, including the results of his interview, his conditional offer, that he had undergone a DOT medical exam, the results of the medical exam, or the reason his conditional offer was rescinded.  (ECF No. 40 ¶ 20.)[12]  After interviewing Turner, the interviewers concluded that he should not be extended an offer of employment, based solely on Turner's

---

[11] Turner disputes this fact, asserting that "[t]he new interviewers demonstrated their awareness by having me to sit in a ___**SMALL CIRCUMFERENCE KITCHEN CHAIR,**___ to mock my obesity size and to demonstrate how I would fit.  They are measuring my weight and size base on the Bus Drivers seat comparison."  (*Id.*)  He cites his Exhibit 1 of 2 (the DOT report) and Exhibit 1 of 7, an image of two chairs.  (ECF No. 39, at 14–21; ECF No. 39-1, at 22.)  Neither of those exhibits supports Turner's contentions that the interviewers made him sit in a small chair or were measuring him, or that the interviewers were aware of his sleep apnea, and those contentions are thus unsworn allegations insufficient to bring MATA's facts into dispute.  *See, e.g.*, *Haywood*, 2020 WL 7480807, at *5 n.7.  This fact is therefore deemed undisputed.

[12] Turner disputes this fact by asserting that Hayes, the MTM recruiting manager he communicated with in his 2018 application process, brought him into his second interview and introduced him to the interviewers, seemingly implying that Hayes told the 2019 interviewers about his 2018 application.  (*Id.*)  Such implication does not rise above the level of speculation or unsubstantiated assertion.  *See Bradley v. Wal-Mart Stores E., LP*, 587 F. App'x 863, 866 (6th Cir. 2014) ("[T]he court deals with evidence, not conclusory allegations, speculation and unsubstantiated assertions.") (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).  In any event, Turner does not support his proposed facts with any citations to the record.  As such, this fact is deemed undisputed.

unfavorable answers to their behavioral-based questions.  (ECF No. 40 ¶ 21.)[13]  The

interviewers' conclusions were the reason MTM did not hire Turner.  (ECF No. 40 ¶ 21.)  Turner

is unaware of any applicants for a MATA bus driver position who were hired who were unable

to obtain a one-year DOT certification.  (*Id.* ¶ 6.)  Turner filed his charge with the EEOC on June

10, 2019.  (*Id.* ¶ 22.)[14]  Turner incorrectly named MATA in his EEOC charge of discrimination.

(ECF No. 40 ¶ 23.)[15]

## **LEGAL STANDARD**

Courts evaluate motions for summary judgment under Federal Rule of Civil Procedure

56(a).  "One of the principal purposes of the summary judgment rule is to isolate and dispose of

factually unsupported claims or defenses."  *Harper v. City of Cleveland*, 781 F. App'x 389, 392

(6th Cir. 2019) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)).  Thus, summary

judgment is appropriate "if the movant shows that there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also*

---

[13] Turner disputes this fact by stating that "[t]he Behavior Questionnaire was the same
Questionnaire as the first Interview, and I answered the same way with the same responses.  This
clearly shows that this second interview was just as sham and just going through a [r]use."  (*Id.*)
Turner does not support this assertion with a citation to the record, and thus it is insufficient to
create a factual dispute.  In addition, MATA responds that Turner's responses were, in fact,
different from the first to second interview and that "Plaintiff answered several critical questions
differently at the second interview, which negatively impacted his second interview."  (*Id.*)  As
support, MATA provides interviewer forms filled out during Turner's interviews, which
demonstrate these differences.  (ECF No. 40-1.)
[14] Turner disputes this fact by asserting that he "was given the ***NOTICE OF SUIT RIGHTS*** on
March 17th, 2020" and citing his Exhibit 1 of 8, which is his EEOC right-to-sue letter.  (*Id.*; ECF
No. 39-1, at 23.)  Turner has not created a factual dispute; he appears to be conflating the date
that he filed his charge with the EEOC with the date that the EEOC issued him the right-to-sue
letter.  This fact is therefore deemed undisputed.
[15] Turner disputes this fact by asserting that, "[a]fter realizing the error, to cover all bases[,] I
motion the court to add the defendant Mid-South Transportation Management be added as a
defendant in this case."  (*Id.*)  Turner does not challenge the underlying fact, and it is therefore
deemed undisputed.

*Wilmington Tr. Co. v. AEP Generating Co.*, 859 F.3d 365, 370 (6th Cir. 2017) ("Summary judgment is proper when, viewing the evidence in the light most favorable to the nonmoving party, there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.") (quoting *Thomas M. Cooley Law Sch. v. Kurzon Strauss, LLP*, 759 F.3d 522, 526 (6th Cir. 2014)).  "A material fact is one 'that might affect the outcome of the suit,' and a genuine dispute exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  *Bethel v. Jenkins*, 988 F.3d 931, 938 (6th Cir. 2021) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  "The moving party bears the burden of showing that no genuine issues of material fact exist."  *McClellan v. Midwest Machining, Inc.*, 900 F.3d 297, 302 (6th Cir. 2018) (citing *Celotex*, 477 U.S. at 324).  "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."  Fed. R. Civ. P. 56(c)(1)(A).  "A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."  Fed. R. Civ. P. 56(c)(2).

In evaluating summary judgment motions, a court must "draw all reasonable inferences in favor of the nonmoving party."  *Harper*, 781 F. App'x at 392 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  Nevertheless, "[t]he nonmoving party must do more than simply 'show that there is some metaphysical doubt as to the material facts.'"  *Stevens-Bratton v. TruGreen, Inc.*, 437 F. Supp. 3d 648, 652 (W.D. Tenn. 2020) (quoting *Lossia v. Flagstar Bancorp, Inc.*, 895 F.3d 423, 428 (6th Cir. 2018)).  A properly supported motion for summary judgment will not be defeated by conclusory allegations, speculation, or

unsubstantiated assertions. *Bradley*, 587 F. App'x at 866 (citing *Lujan*, 497 U.S. at 888). In determining whether a dispute of material fact exists, "[t]he court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). At the same time, "[a] district court is not required to search the entire record to establish that it is bereft of a genuine issue of material fact," as "judges are not like pigs, hunting for truffles that might be buried in the record." *Emerson v. Novartis Pharms. Corp.*, 446 F. App'x 733, 736 (6th Cir. 2011) (citations, quotations, and alterations omitted).

"Although summary judgment must be used carefully, it 'is an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action[,] rather than a disfavored procedural shortcut.'" *Stevens-Bratton*, 437 F. Supp. 3d at 652 (quoting *FDIC v. Jeff Miller Stables*, 573 F.3d 289, 294 (6th Cir. 2009)). Ultimately, "[w]hen the non-moving party fails to make a sufficient showing of an essential element of his case on which he bears the burden of proof, the moving parties are entitled to judgment as a matter of law, and summary judgment is proper." *Peterson v. Medtronic, Inc.*, No. 2:17-cv-02457-MSN-atc, 2020 WL 6999225, at *4 (W.D. Tenn. Sept. 30, 2020) (quoting *Martinez v. Cracker Barrel Old Country Store, Inc.*, 703 F.3d 911, 914 (6th Cir. 2013)). "These standards apply regardless of a party's *pro se* status; the liberal pleading standard for *pro se* parties is inapplicable once a case has progressed to the summary judgment stage." *Almasri v. Valero Ref. Co. – Tenn., LLC*, No. 2:20-cv-02863-SHL-tmp, 2022 WL 895732, at *3 (W.D. Tenn. Feb. 18, 2022), *report and recommendation adopted*, 2022 WL 891842 (W.D. Tenn. Mar. 25, 2022) (citations and internal quotations omitted).

## ANALYSIS

MATA asserts that it is entitled to summary judgment on several grounds.  MATA first

argues that Turner's claims related to MTM's failure to hire him in 2018 are not timely.  MATA

also asserts that Turner's claims based on MTM's failed to hire him in 2019 fail as a matter of

law.  Finally, MATA contends it is not the proper defendant in this litigation, and amendment to

add MTM as a defendant should be denied.  MATA's arguments are well-founded, and summary

judgment is recommended.

## I.    Turner's Claims Related to His 2018 Application Are Untimely.

Turner failed to file his charge with the EEOC relating to his 2018 discrimination claim

within the statute of limitations, warranting summary judgment in MATA's favor.  Turner brings

his claims under the ADA.  (*See* Compl. (ECF No. 1); Am. Compl. (ECF No. 9).)[16]  Under the

ADA, "when pursuing a charge initially with an equivalent state agency, a plaintiff has 300 days

from an act of discrimination to bring a charge, but when brought with the EEOC directly, a

plaintiff has only 180 days."  *Block v. Meharry Med. Coll.*, 723 F. App'x 273, 277 n.2 (6th Cir.

2018) (citing 42 U.S.C. § 2000e-5; *Cox v. City of Memphis*, 230 F.3d 199, 202 n.2 (6th Cir.

2000)); *see also Hollingsworth v. Henry Cnty. Med. Ctr. EMS, Inc.*, No. 2:05-cv-01272 B, 2007

WL 1695303, at *2 (W.D. Tenn. June 12, 2007) ("The statute requires that an aggrieved

individual file a charge with the Equal Employment Opportunity Commission . . . within 300

---

[16] For the purposes of ruling on the Motion, the Court construes the complaints together.
Typically, "when plaintiff files [an] amended complaint, [the] new complaint supersedes all
previous complaints and controls [the] case from that point forward."  *Parry v. Mohawk Motors
of Mich., Inc.*, 236 F.3d 299, 306 (6th Cir. 2000) (citing *In re Atlas Van Lines, Inc.*, 209 F.3d
1064, 1067 (8th Cir. 2000)).  Nevertheless, in this case, the Court construes Turner's amended
complaint together with the original complaint.  *See, e.g.*, *Durante v. Fairlane Town Ctr.*, 201 F.
App'x 338, 344 (6th Cir. 2006) (acknowledging that *pro se* pleadings are held to a less stringent
standard than those drafted by an attorney, but "liberal treatment of *pro se* pleadings does not
require lenient treatment of substantive law."); *see also Almasri*, No. 2022 WL 895732, at *3.

days 'after the alleged unlawful employment practice occurred,' if she 'initially instituted

proceedings with a State or local agency' qualified to provide relief.") (quoting 42 U.S.C.

§ 2000e-5(e)(1)).  "The Sixth Circuit has labeled this provision as containing 'a dual statute of

limitations,' with a 300-day limit for 'deferral state[s]' and a 180-day limit for all other states."

*EEOC v. Dolgencorp, LLC*, 196 F. Supp. 3d 783, 799 (E.D. Tenn. 2016), *aff'd*, 899 F.3d 428

(6th Cir. 2018) (quoting *Amini v. Oberlin Coll.*, 259 F.3d 493, 498 (6th Cir. 2001)).  Tennessee is

a deferral state, and therefore "the statute of limitations for filing an employment discrimination

charge with the EEOC or the [Tennessee Human Rights Commission] is 300 days after the

alleged unlawful employment action occurred."  *Id.* at 799 (quoting *Holleman v. BellSouth

Telecomms., Inc.*, No. 3:09-CV-311, 2011 WL 3876590, at *7 (E.D. Tenn. Sept. 1, 2011)).

Nevertheless, "[i]f a charge is not first filed with the [Tennessee Human Rights Commission], or

dual-filed with the EEOC and the [Tennessee Human Rights Commission] contemporaneously,

. . . then the 180-day limit applies."  *Id.* (citing *El-Zabet v. Nissan N. Am., Inc.*, 211 F. App'x

460, 463 (6th Cir. 2006)).

      Here, it is undisputed that Turner's conditional job offer was rescinded on or about July

2, 2018.  Turner filed his charge on June 10, 2019, on an EEOC form, naming the Tennessee

Human Rights Commission and indicating that he wanted the "charge filed with both the EEOC

and the State or local Agency, if any."  (ECF No. 38-2.)  Given this dual filing, Turner had 300

days from July 2, 2018, to timely file his charge with the EEOC, or until April 28, 2019.

Turner's filing with the EEOC on June 10, 2019, was thus untimely, as it occurred forty-three

days outside the 300-day window.[17]

_____

[17] As noted above, the EEOC issued its right to sue letter to Turner on March 17, 2020.  (ECF
No. 39-1, at 23.)  That document triggers the 90-day window in which a party must initiate a
federal lawsuit.  *Jones v. Air Serv./ABM*, No. 2:19-cv-02861-TLP-tmp, 2020 WL 6440712, at *3

Turner appears to allege that the discrimination from 2018 is ongoing. (*See* Compl. ¶ 8.)

His claims do not, however, warrant consideration under the continuing-violation doctrine. "The

continuing-violation doctrine only applies in hostile-work-environment cases, as '[t]heir very

nature involves repeated conduct' where the claim is 'based on the cumulative effect of all such

acts.'" *O'Donnell v. Univ. Hosps. Cleveland Med. Ctr.*, 833 F. App'x 605, 613–14 (6th Cir.

2020) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002)). "In cases that

do not involve a hostile-work-environment claim, each 'discrete discriminatory act starts a new

clock for filing charges alleging that act. The charge, therefore must be filed within the'

applicable limitations period 'after the discrete discriminatory act occurred.'" *Id.* at 614 (quoting

*Nat'l R.R. Passenger Corp.*, 536 U.S. at 113). Turner has not alleged discrimination based on a

hostile work environment; therefore, to the extent he seeks to rely on the continuing-violation

doctrine, that argument is without merit.

For the foregoing reasons, the Court recommends that summary judgment be granted as

to Turner's claims for failure to hire and failure to accommodate as to his 2018 application with

MATA because they are untimely.[18]

---

(W.D. Tenn. July 16, 2020), *report and recommendation adopted*, 2020 WL 4500673 (W.D.
Tenn. Aug. 5, 2020) ("Under 42 U.S.C. § 2000e-5(f)(1), plaintiffs must file their Title VII
complaints within ninety days of receiving the EEOC's right to sue letter."). The timing of the
right-to-sue letter does not have a bearing on whether Turner's charge was timely filed with the
EEOC.

[18] MATA alternatively argues that Turner's 2018 failure-to-hire claim cannot survive the
*McDonnell Douglas* burden-shifting analysis and his 2018 failure-to-accommodate claim fails
because he did not request an accommodation connected to limitations imposed by sleep apnea.
(ECF No. 37-1, at 6–12.) Because the 2018 claims are untimely, the Court does not reach those
arguments.

**II.    Turner's Claims Related to His 2019 Application Fail as a Matter of Law.**

Turner also alleges that MATA discriminated against him in January 2019, when it failed

to hire him upon his re-application for a bus driver position.[19]  (Am. Compl. ¶ 7.)  MATA seeks

summary judgment on that claim because Turner has "offer[ed] no direct evidence that the

decision not to hire him was based on his alleged disability" and because he "is unable to

establish an ADA failure to hire discrimination claim under the *McDonnell Douglas* burden-

shifting framework."  (ECF No. 37-1, at 12.)

A.    Legal Standard for Failure to Hire Under the ADA

The ADA provides that "[n]o covered entity shall discriminate against a qualified

individual on the basis of disability in regard to job application procedures, the hiring,

advancement, or discharge of employees, employee compensation, job training, and other terms,

conditions, and privileges of employment."  42 U.S.C. § 12112.  "The ADA defines

'discriminate' to include the failure to provide reasonable accommodation to an otherwise

qualified individual with a disability, unless doing so would impose an undue hardship on the

employer's business."  *Keith v. Cnty. of Oakland*, 703 F.3d 918, 923 (6th Cir. 2013) (quoting 42

U.S.C. § 12112(b)(5)).

To establish a claim for discrimination under the ADA, "a plaintiff must present either

direct evidence of discrimination or circumstantial evidence permitting an inference of

discriminatory treatment."  *Miller v. Univ. Hosps. Health Sys.*, No. 19-3788, 2020 WL 4783553,

at *4 (6th Cir. Aug. 13, 2020) (citing *Whitfield v. Tennessee*, 639 F.3d 253, 258–59 (6th Cir.

2011)).  "Indirect evidence is evidence that requires a factfinder to draw reasonable inferences

---

[19] Because Turner filed his EEOC charge within 300 days of that discrete act, the charge was
timely under 42 U.S.C. § 2000e-5.  MATA does not challenge the 2019 charge's timeliness.

that discrimination occurred," whereas "direct evidence does not require a factfinder to draw any

inferences to conclude that the employer wrongfully discriminated." *Brown v. Kelsey-Hayes

Co.*, 814 F. App'x 72, 79 (6th Cir. 2020) (internal citations and alterations omitted). "In the

absence of direct evidence of discrimination, a plaintiff may avoid summary judgment on her

ADA discrimination claim by 'point[ing] to circumstantial evidence of discrimination under the

well-trod *McDonnell Douglas* burden-shifting framework.'" *Gilinsky v. Marcus & Millichap

Real Est. Inv. Servs. of Seattle, Inc.*, No. 3:20-CV-00261, 2021 WL 2897300, at *12 (M.D. Tenn.

July 9, 2021) (quoting *Babb v. Maryville Anesthesiologists P.C.*, 942 F.3d 308, 319 (6th Cir.

2019)).

Proving a *prima facie* case of discrimination under the ADA requires a plaintiff to show:

"'1) he or she is disabled; 2) otherwise qualified for the position, with or without reasonable

accommodation; 3) suffered an adverse employment decision; 4) the employer knew or had

reason to know of the plaintiff's disability; and 5) the position remained open while the employer

sought other applicants or the disabled individual was replaced.'" *Miller*, 2020 WL 4783553, at

*4 (quoting *Whitfield*, 639 F.3d at 258–59). If the plaintiff satisfies this "not onerous"

requirement, the burden then shifts to the employer to offer a "legitimate explanation for its

action." *Id.* (citing *Ferrari v. Ford Motor Co.*, 826 F.3d 885, 891 (6th Cir. 2016)). Finally, if the

employer meets its legitimate-explanation requirement—again, typically not onerous—the

burden shifts back to the plaintiff to provide evidence that the proffered explanation is pretextual.

*Id.* (citing *Ferrari*, 826 F.3d at 892). "[T]o establish pretext, a plaintiff will usually need to show

'that the employer's stated reason for the adverse employment action either (1) has no basis in

fact, (2) was not the actual reason, or (3) is insufficient to explain the employer's

action." *Yarberry v. Gregg Appliances, Inc.*, 625 F. App'x 729, 741 (6th Cir. 2015) (quoting

14

*Risch v. Royal Oak Police Dept.*, 581 F.3d 383, 391 (6th Cir. 2009)). "Under [*McDonnell Douglas*], the plaintiff retains the ultimate burden of persuasion at all times." *Hedrick v. Western Rsrv. Care Sys.*, 355 F.3d 444, 453 (6th Cir. 2004).

    B.    <u>Turner's Prima Facie Failure-to-Hire Claim</u>

MATA first argues that Turner cannot demonstrate the fourth prong of his *prima facie* case, that MTM knew or had reason to know that he suffered from disabling sleep apnea.[20] MATA relies on the undisputed fact that neither of the people who interviewed Turner in 2019 were involved in or even aware of his 2018 interview and did not know he had sleep apnea. (ECF No. 37-1, at 13.)

As an initial matter, Turner has not established that any MTM employees knew of his sleep apnea. Though Turner asserts he discussed his sleep apnea with Hayes, the MTM hiring manager, in 2018, he did not support that assertion with a citation to the record. (*See supra* note 9.) It is undisputed that Hayes and possibly others at MTM knew Turner had previously undergone a sleep study and was overweight, but it is also undisputed that the 2018 DOT Report did not reference sleep apnea. (ECF No. 40 ¶¶ 10–12.) "Knowledge of an employee's symptoms . . . does not necessarily equate to knowledge of his disability." *Nilles v. Givaudan Flavors Corp.*, 521 F. App'x 364, 368 (6th Cir. 2013); *see also Brown v. BKW Drywall Supply, Inc.*, 305 F. Supp. 2d 814, 829 (S.D. Ohio 2004) ("Knowing that an employee has health problems . . . is not the same as knowing that the employee suffers from a disability."). Turner

---

[20] The only possible piece of direct evidence as to Turner's 2019 claims is his contention that the interviewers made him sit in a small chair during his interview to mock his obesity. (ECF No. 40 ¶ 19.) As discussed above, however, that contention is supported only by Turner's unsworn statements in his response to MATA's statement of undisputed facts, which are insufficient to oppose summary judgment. (*See supra* note 5 (citing *Haywood*, 2020 WL 7480807, at *5 n.7).) This case is therefore premised, if anything, on indirect evidence, subject to the *McDonnell Douglas* framework.

has offered no record evidence that MTM knew he had sleep apnea, and thus he has failed to
establish this element of his prima facie case.

Even if Turner had shown that Hayes or other MTM employees knew about his sleep
apnea, he has not met his burden of showing that the 2019 interviewers knew.  "An employee
cannot be subject to an adverse employment action based on his disability unless the individual
decisionmaker responsible for [the adverse action] has knowledge of that disability."  *Tennial v.
United Parcel Serv., Inc.*, 840 F.3d 292, 306 (6th Cir. 2016) (citing *Nilles*, 521 F. App'x at 368);
*see also Messenheimer v. Coastal Pet Prods., Inc.*, 764 F. App'x 517, 519 (6th Cir. 2019) ("To
meet this element, [the plaintiff] must demonstrate that 'the individual decisionmakers
responsible for her demotion had knowledge of her disability.") (quoting *Tennial*, 840 F.3d at
306); *Arthur v. Am. Showa, Inc.*, 625 F. App'x 704, 708 (6th Cir. 2015) (quoting *Nilles*, 521 F.
App'x at 368).

Here, the undisputed facts are that the relevant decisionmakers were the 2019
interviewers, who had no knowledge of Turner's sleep apnea.  Turner's 2019 interview was
conducted by MTM employees Wynne Brown and Chauniece Thompson, neither of whom had
any involvement with Turner's 2018 application.  (ECF No. 38-3 ¶ 4, 7.)  According to Brown,
he and Thompson "concluded that Mr. Turner should not be extended an offer of employment"
based solely on his interview responses.  (*Id.* ¶ 5.)  Their evaluation was the basis for MTM's
decision not to hire Turner in 2019.  (ECF No. 38-1 ¶ 9.)

Brown also declares that at no time during the interview did they discuss "sleep apnea,
sleep studies, disabilities, requested accommodations, anything regarding Mr. Turner's prior
application for employment with MTM, or the results of any medical examination of Mr.
Turner."  (ECF No. 38-3 ¶ 6.)  Brown asserts that

> [a]t no time during Mr. Turner's application process in January 2019, including
> his interview and our decision not to extend an offer of employment to Mr.
> Turner, were Ms. Thompson or myself aware that Mr. Turner had sleep apnea.
> We were also not aware that Mr. Turner had previously applied for employment
> with MTM or of any information related to that application, including the results
> of his interview, his conditional offer, that he had undergone a Department of
> Transportation medical exam, the results of the medical exam, or the reason his
> conditional offer was rescinded. Neither Ms. Thompson nor myself were
> involved in Mr. Turner's previous application to MTM in any way.

(*Id.* ¶ 7.)

Turner's deposition testimony confirms many of those details. (*See* ECF No. 38-2.) He

testified that he did not think his 2019 application stated why he did not get the job in 2018,

nothing about his 2018 interview came up during his 2019 interview, he was unaware of whether

the 2019 interviewers knew of his sleep apnea or that he had a sleep study done before, and the

2019 interviewers did not bring up the sleep study. (*Id.* at 71:20–72:25.) Turner suggests that

Brown and Thompson knew about his disability based on his unsupported statement that Hayes

walked him into the interview and introduced him, but, as noted above, that suggestion is

speculative and insufficient to defeat summary judgment. (*See supra* note 12 (citing *Bradley*,

587 F. App'x at 866).) Turner also claims that Brown and Thompson mocked his obesity by

making him sit in a small chair, but even if that claim were adequately supported and true, it

would not indicate that Brown or Thompson knew Turner had sleep apnea. *See, e.g.*, *Nilles*, 521

F. App'x at 369 (finding the plaintiff failed to establish the prima facie element of knowledge

where the decisionmaker "only knew that Nilles had taken two leaves of absence, each for less

than a month and separated by over a year, and that Nilles was seeing several doctors and had

had an MRI," which did "not strongly imply that Nilles had a permanent disability").

The crux of Turner's 2019 failure to hire claim—that he was not hired based upon his

disability—finds no support in the record and, in fact, is undermined by it. Turner has pointed to

nothing in the record that suggests a genuine dispute of material fact as to MATA's assertion that it lacked knowledge of his disability and therefore its 2019 decision not to hire him could not have been based on that disability. *See, e.g.*, *Land v. S. States Coop., Inc.*, 740 F. App'x 845, (6th Cir. 2018) (affirming summary judgment to an employer where the plaintiff employee only told his direct supervisor about his disability, and the supervisor "was not a decision-maker and played no role in the termination process," finding "no evidence that anyone involved in the termination decision had any information regarding" the plaintiff's disability or requested accommodation). Summary judgment is therefore warranted as to Turner's failure-to-hire claim related to his 2019 application.

C.    The Burden-Shifting Framework

Even if Turner had met his burden of establishing his prima facie case, summary judgment is still warranted as to Turner's 2019 failure-to-hire claim because MATA has demonstrated legitimate and nondiscriminatory reasons for not hiring Turner, and Turner has not demonstrated that those reasons were merely pretextual.

MATA asserts that Turner was not hired because he "answered several critical questions differently at the second interview, which negatively impacted his second interview." (ECF No. 40 ¶ 21.) The 2018 and 2019 interview records submitted by MATA reflect that Turner's answers scored worse in his second interview than his first in several key respects. (ECF No. 40-1.) The same thirty-one questions were posed in both interviews. (*See generally id.* 3–24.) Responses were ranked on a five-point scale: unsatisfactory, marginal, satisfactory, good, and excellent. (*See, e.g.*, ECF 40-1, at 4.) Whereas the 2018 interviewers deemed only one of Turner's answers marginal and none unsatisfactory, the 2019 interviewers collectively characterized thirteen of his responses marginal and one unsatisfactory, many in the categories of

"Commitment to Safety," "Compliance," "Teamwork," and "Customer Service." (*Id.* at 15–24.)
For example, in his second interview, Turner indicated that he had lost a job due to yelling at
children to sit down, which was not noted in his first interview. (*Id.* at 5, 17.) He also indicated
in his first interview that he had experience with children and the elderly and had been trained to
load and unload wheelchairs, but he said in his second interview that he had experience with
children only. (*Id.* at 7, 19, 24.) These perceived interview deficiencies satisfy MATA's burden
of demonstrating the decision not to hire Turner was based on legitimate and nondiscriminatory
reasons.

The burden thus shifts back to Turner to demonstrate that MATA's reason has no basis in
fact, was not the actual reason he was not hired, or insufficiently explains that decision. *See
Yarberry*, 625 F. App'x at 741. Even drawing all reasonable inferences in his favor, Turner has
not met this burden.

Turner does not offer any direct challenge to MATA's assertion that the decision not to
hire him was legitimate, nondiscriminatory, and not pretextual. Instead, he provides the
unsupported statement that "[t]he Behavior Questionnaire was the same Questionnaire as the first
Interview, and I answered the same way with the same responses. This clearly shows that this
second interview was just as sham and just going through a [r]use." (ECF No. 40 ¶ 21.)
However, "[m]ere conjecture that the employer's explanation is a pretext for intentional
discrimination is an insufficient basis for denial of summary judgment. A court may not reject
an employer's explanation of its action unless there is sufficient basis *in the evidence* for doing
so." *Upshaw v. Ford Motor Co.*, 576 F.3d 576, 587 (6th Cir. 2009) (quoting *Brennan v. Tractor
Supply Co.*, 237 F. App'x 9, 19–20 (6th Cir. 2007) (alterations omitted)). Turner's position is
belied by the record, particularly the interview forms, which demonstrate the discrepancies

between Turner's 2018 and 2019 interview responses.  Turner's position is further weakened by the lack of evidence that the 2019 interviewers even knew he was disabled, such that their evaluation of his responses could be pretext for disability discrimination.  *See EEOC v. Ford Motor Co.*, 782 F.3d 753, 768 (6th Cir. 2015) (finding evidence of discriminatory animus by "nondecisionmakers cannot alone prove pretext").

Turner has pointed to no evidence in the record that the proffered reason for not hiring him (his poor interview performance) was not based in fact, did not actually motivate the decision not to hire him, or was insufficient to explain that decision.  Turner has thus failed to carry his burden under *McDonnell Douglas* of demonstrating pretext.  Summary judgment in favor of MATA is warranted as to Turner's failure-to-hire claim related to his 2019 application.

## III.    Turner's Motion to Add MTM as a Defendant Should Be Denied.

Turner moves to have MTM added as a defendant (ECF No. 34), which MATA opposes (ECF No. 35).  "[M]otions for leave to amend are reviewed under the deferential standard of Federal Rule of Civil Procedure 15, and the Court 'should freely give leave when justice so requires.'" *Porter v. AAR Aircraft Servs., Inc.*, 316 F.R.D. 691, 692 (W.D. Tenn. 2016) (quoting Fed. R. Civ. P. 15(a)(2)).  Where, as here, a plaintiff has had the opportunity to fully brief a motion for summary judgment and respond to all of the defendant's potential defenses, and the proposed amended complaint presents the same facts and legal standards as the original complaint, justice does not require that the plaintiff be allowed to amend.  *Thompson v. City of Lansing*, No. 1:08-CV-409, 2009 WL 752421, at *9 (W.D. Mich. Mar. 20, 2009), *aff'd*, 410 F. App'x 922 (6th Cir. 2011) (finding that summary judgment would be warranted under both versions of the complaint, and thus it "is not a circumstance where 'justice so requires' the Court to grant leave to amend").

Justice does not require allowing for the addition of MTM as a defendant in this action.

Turner does not seek to add any additional facts or causes of action through his proposed

amendment; he seeks only to swap out MATA for MTM as a party.  The claims Turner proposes

to assert against MTM are thus precisely the same as those he asserted against MATA, all of

which are subject to summary judgment, as described above.[21]  In addition, as argued by MATA,

Turner waited more three months after the applicable deadline set forth in the Scheduling Order

in this case (ECF No. 18) to file his motion to amend.  As such, justice does not require that

Turner be permitted to amend his complaint to add MTM as a defendant, and it is recommended

that his motion to amend be denied.[22]

---

[21] This finding is akin to a finding that Turner's proposed amendment would be futile, and
"[t]here is some Sixth Circuit precedent indicating that 'futility' analysis on a motion to amend
examines whether the amended claims could withstand a motion to dismiss, rather than a motion
for summary judgment."  *Id.*  As noted by the *Thompson* court, however, that precedent—
primarily *Rose v. Hartford Underwriters Insurance Co.*, 203 F.3d 417 (6th Cir. 2000)—involved
requests for leave to amend to add facts and causes of action not already before the court on
summary judgment. *Id.* (citing *Rose*, 203 F.3d at 421); *see also Huguely v. Parker*, No. 3:19-cv-
00598, 2020 WL 434254, at * (M.D. Tenn. Jan. 28, 2020) (refusing to find futility where the
plaintiff's response to the defendants' summary judgment motion was not yet due, finding that
"[t]he defendants are effectively trying to litigate their summary judgment motion in the context
of the plaintiff's motion to amend, without the benefit of full briefing by both parties").  In
contrast, here all applicable facts have been presented and all issues fully briefed, and the Court's
recommendation herein would be the same whether the defendant were MATA or MTM.  The
cited futility precedent is therefore distinguishable.
[22] Due to the finding that justice does not require amendment, the Court will not address
MATA's arguments that Turner's proposed amendment would be futile because he failed to
timely file an EEOC charge against MTM or that Turner's motion to amend does not comply
with applicable local rules.  (*See* ECF No. 35.)

## <u>RECOMMENDATION</u>

For the foregoing reasons, this Court recommends that MATA be granted summary judgment as to all of Turner's claims.  The Court further recommends that Turner's motion to add MTM as a defendant be denied.

Respectfully submitted this 13th day of May, 2022.

s/Annie T. Christoff
ANNIE T. CHRISTOFF
UNITED STATES MAGISTRATE JUDGE

### NOTICE

Within fourteen (14) days after being served with a copy of this report and recommendation disposition, a party may serve and file written objections to the proposed findings and recommendations.  A party may respond to another party's objections within fourteen (14) days after being served with a copy.  Fed. R. Civ. P. 72(b)(2).  Failure to file objections within fourteen (14) days may constitute waiver of objections, exceptions, and further appeal.